UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LONZETTE K. GADDIS                    CIVIL ACTION NO. 07-cv-2122

VERSUS                                JUDGE WALTER

WARDEN LOUISIANA STATE                MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

Lonzette K. Gaddis ("Petitioner") was charged with second-degree murder, but a Caddo Parish jury convicted him of the responsive verdict of manslaughter. The State sought an habitual offender enhancement to the sentence on the grounds that Petitioner was a fourth-felony offender. The enhancement was granted, and Petitioner received a life sentence. The conviction and sentence were affirmed on direct appeal. State v. Gaddis, 839 So.2d 1258 (La. App. 2d Cir. 2003), writ denied, 872 So.2d 519 (La. 2004), cert. denied, 125 S.Ct. 1649 (2005). Petitioner also filed in state court a post-conviction application. He now presents a petition for federal habeas corpus relief that asserts four claims.

Petitioner's federal petition is untimely on the face of the record, and it was initially recommended that the petition be dismissed for that reason. Petitioner then objected that he suffered from a mental health problem to an extent that he was entitled to equitable tolling to excuse his untimeliness. The Report and Recommendation was withdrawn, and the State was directed to respond to the merits of the claims. Petitioner has sought discovery of his

mental health records in an effort to establish his entitlement to equitable tolling. There is a significant likelihood that the petition is untimely, but it might require an exploration of additional facts to resolve that defense. It is instead recommended, for the reasons that follow, that the petition be denied on the merits.

**Background Facts**

Erica Walker, in the early morning hours of June 11, 2000, drove to a vacant lot in Shreveport known as "the slab." The slab is a neighborhood haunt known for drinking, gambling, and drug activity. A witness saw Walker get out of her vehicle and approach Petitioner. The two argued, and they also exchanged some unknown items.

Walker sat down on a bucket, and Petitioner pointed a .38 caliber handgun to her face and fired, inflicting fatal injuries to her neck and throat. Cash and cocaine were found on the victim. Eyewitness Jerry Jones testified that Walker was not armed and never threatened Petitioner. A forensic pathologist testified that the gun was fired from a distance of 12 to 24 inches, and the bullet entered at a 45 degree angle downward, which was consistent with the victim being seated and the shooter standing over her.

Petitioner fled the scene. He and a cousin drove to his father's house and obtained $30. Petitioner then traveled just across the state border to Joaquin, Texas. When police attempted to arrest Petitioner in Joaquin, he tried to flee into nearby woods. Petitioner was arrested and returned to Louisiana for trial. During transport, he said that Walker had a gun and had brought this upon herself.

Petitioner, who admitted to prior felony convictions, testified at trial that it was Walker who came up to him with a chrome pistol and demanded that he pay her money owed on a gambling debt from a recent dice game. Petitioner said he knew Walker "have shot before," and she got out of the car shouting, "M***** F*****, if you don't have my money, I will lay your ass down. I don't want to hear it." Petitioner said that he gave Walker a $20 bill, even though he owed her only $10.

Petitioner testified that Walker then sat down and put down her gun but, as Petitioner approached her to ask for his $10 change, Walker said, "M***** F*****, didn't I tell you!" Petitioner said Walker then picked up her gun and moved toward him. Petitioner said he ran backward from Walker and shot her because he believed she would kill him. Petitioner said he fled the scene, called 911, and – after stopping on the roadside to pray – threw his gun off a bridge over I-220. He could not explain the absence of Walker's gun from the crime scene but speculated that someone perhaps stole it. He said he fled to Texas because he was scared, and he ran when his Texas cousins shouted, "Here come a constable!" Petitioner said he was not familiar with Texas law enforcement terminology and did not know what a constable was, so he ran.

The jury rejected Petitioner's self-defense claim. It returned a verdict of guilty of manslaughter.

**Prosecutorial Misconduct**

Petitioner argues that the prosecutor made an improper opening statement because he referred to a possible drug crime committed by Petitioner. A review of the matters at issue and the state court record shows that the claim lacks merit.

Petitioner was charged with second-degree murder, which includes the killing of a human being (1) when the offender has a specific intent to kill or inflict great bodily harm or (2) when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, even though he has no intent to kill or inflict great bodily harm. La.R.S. 14:30.1.

Manslaughter, the responsive verdict that the jury returned, includes a homicide that would be first or second-degree murder but the offense is committed in sudden passion or heat of blood. A manslaughter conviction is also appropriate for a homicide committed without any intent to cause death or great bodily harm if the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in the first and second-degree murder statutes or any intentional misdemeanor directly affecting the person. La.R.S. 14:31.

There are other means of obtaining a conviction under the statutes, but those theories include all that are applicable here. They obviously make relevant potential felonies and even certain misdemeanors the defendant may have been engaged in at the time of the killing.

The State filed a pretrial notice pursuant to Louisiana Code of Evidence Article 404(B) that it intended to use evidence of other crimes, including a drug transaction at the scene of the shooting. Testimony at the hearing was that a witness saw Petitioner and the victim make a hand-to-hand transaction of unknown items. The victim was found clutching a $20 bill, and emergency room workers recovered crack cocaine from her clothing. Trial Judge John Mosely held that the activities surrounding the shooting were part of the res gestae and, therefore, were admissible under Louisiana evidence law. Tr. 333. The possible drug crime also appears relevant to the charged crime.

Prosecutor Dale Cox, in his opening statement, outlined the evidence that would be presented and suggested that Petitioner and the victim were "probably arguing about the drug transaction, because what she had handed him, more than likely, was drugs." Tr. 741. He also told the jury how emergency room workers found two small plastic bags of crack cocaine on the victim's body. Tr. 742. Testimony was presented at trial to support these claims.

Petitioner argued on direct appeal that the trial court erred in admitting this other crimes evidence at trial. The appellate court held that there was no error in the trial court's classification of the drug transaction evidence as res gestae. It explained that the doctrine allowed the admission of other crimes evidence when it was not just to depict the defendant as a bad man, but to complete the story of the crime by showing the immediate context of the events near in time and place. State v. Gaddis, 839 So.2d at 1271.

Petitioner argued in his post-conviction application that the prosecutor engaged in misconduct when, in his opening statement, he made reference to the likely drug transaction. Tr. 975-76. The judge denied the claim on the grounds that it was not cognizable on post-conviction application because it had been fully litigated in the direct appeal. Tr. 995. That is a debatable conclusion. The state appellate court held that the trial court correctly denied the allegations of prosecutorial misconduct, but it gave no specific reasons, implying a decision on the merits. Tr. 1101. The Supreme Court of Louisiana denied writs without comment. Tr. 1227.

Improper jury argument by the prosecutor does not provide a basis for habeas relief unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986). The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988); Turner v. Johnson, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997).

Furthermore, federal habeas relief may not be granted unless the state court proceeding resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A merely incorrect state court decision is not sufficient to constitute an unreasonable application of federal law; rather, the decision must be objectively

unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

First, Petitioner has not demonstrated that the prosecutor made any improper argument. The state courts ruled in a quite reasonable fashion that the evidence was admissible, and the prosecutor confined his opening statement to what was permitted by the court's ruling. To the extent one might possibly construe the opening statement as inappropriate, it certainly did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. Moreover, the state appellate court's denial of this claim was not an unreasonable application of any clearly established Supreme Court precedent.

**Ineffective Assistance of Counsel**

    **A. Introduction**

Petitioner claims that trial counsel was ineffective because he did not object (based on inadequate chain of custody) when Detective Oster displayed to the jury crack cocaine that was retrieved from the victim. Petitioner also claims that counsel was ineffective when he agreed to stipulate to a crime lab report that found the substance was cocaine. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so the question here is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (U.S. 2007). And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (U.S. 2009).

**B. Display of Drugs to Jury**

Detective Oster testified at trial that the emergency room nurse gave him the victim's personal possessions, which included a lighter, $83 in cash, and two small packages of what appeared to be crack cocaine. The prosecutor asked Oster if he could show the packages to the jury, and Oster did. The prosecutor then had Detective Oster describe his initials on the evidence envelope that contained the drugs, explain that Corporal Duddy took the drugs to the crime lab for testing, and recount that Oster retrieved the drugs from the crime lab to bring to the trial. Oster added that he recognized his initials on the evidence tag that he completed. Tr. 412-14.

Petitioner argues that defense counsel should have objected because the chain of custody related to the drugs was lacking testimony from the nurse and other persons who handled the drugs. Petitioner recognizes, however, that under Louisiana law "[a] continuous

chain of custody is not essential to enable the state to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized by the officer." State v. Godeaux, 378 So.2d 941 (La. 1979). Louisiana jurisprudence requires that "an object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial." State v. Collins, 998 So.2d 765, 775 (La. App. 2d Cir. 2008). "[I]t suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case." Id. The State does not have to "eliminate all possibilities that the object has been altered," but "need only establish by a preponderance of the evidence that the object is the one connected with the case." Id. A defect in the chain of custody goes to the weight of the evidence rather than its admissibility. Id. In Collins, it was held sufficient that a state trooper testified that the drug evidence presented at trial was the same evidence he delivered to the crime lab two years previously.

      Counsel could have perhaps objected to the imperfect chain of custody, but it is not significantly likely that the objection would have been sustained. Detective Oster's testimony and the recognition of his initials on the evidence tag were likely to have resulted in a finding, as in Collins, that a sufficient showing had been made to gain admission of the drugs into evidence. Even if one assumed that counsel should have made the objection and that it would have been sustained, the lack of the objection does not result in meaningful prejudice. The objection would have prevented Detective Oster from displaying the drugs

to the jury, but it would not have prevented him from testifying that his investigation determined that the victim had crack cocaine on her person at the time of the crime.

The trial judge made a conclusory finding that Petitioner did not provide any factual basis or evidence to support this claim. Tr. 995. The state appellate court held in a short opinion that the trial court "correctly denied" the ineffective assistance claim, adding: "The decision to concede the chain of custody and stipulate the nature of the substance, cocaine, found on the victim, is not shown to be professional error or to have caused any prejudice to the applicant's case." Tr. 1101. The Supreme Court of Louisiana denied writs without comment. Tr. 1227. For the reasons stated above, the state court's adjudication of this claim was not an unreasonable application of Strickland to the facts. Rather, it appears the state court's decision was entirely reasonable, especially considering the likely lack of merit in the objection that Petitioner complains counsel should have made.

### C. Stipulation of Lab Report

Between witnesses, the prosecutor stated that he needed to offer a stipulation that he and defense counsel had agreed upon. He stated that, in connection with the testimony heard that day, "it is stipulated that State Exhibit 10 are the packages of crack cocaine retrieved from the LSU Medical Center transported to the Northwest Crime Lab and analyzed by Kevin Bats, who, if he were to testify, would be accepted as an expert witness in forensic chemistry." The stipulation continued that Mr. Bats' report would show that the packages in Exhibit 10 "in fact contained cocaine ..., but that he could not tell the concentration of the

amount of cocaine in these two substances." Defense counsel agreed that this was a fair statement of the stipulation. Tr. 441-42.

Petitioner argues that counsel should not have entered this stipulation, but defense counsel may make reasonable stipulations regarding uncontested evidence without conceding guilt or abandoning the adversarial role, and there is a presumption that the stipulations are sound trial strategy. See Mattio v. Cain, 267 Fed. Appx. 389, 391 (5th Cir. 2008). There is nothing to suggest that the simple stipulations at issue were incompetent performance by defense counsel. The prosecution, had there not been a stipulation, would have called Mr. Bats to testify and thereby devoted more of the jury's attention to the cocaine issue. The stipulation avoided that.

Petitioner argues that counsel should not have stipulated to the lab report because it contained "inconsistencies." Petitioner bases this claim on the fact that there were two lab reports in the case. Both show evidence under the same case number submitted on the same date and received by the same employee. One of the reports shows the receipt of items of clothing worn by the victim, and that evidence was analyzed on July 25, 2000 by Richard Beighley. Petitioner states that the second report is regarding receipt of two plastic bags containing white material, a lighter, a piece of paper, and a driver's license. These items were analyzed by a different analyst. Petitioner argues that the differences between the two reports cried out for counsel to raise an objection.

Petitioner's statements do not suggest any discrepancy in the crime lab report regarding the drugs. It is obvious that one report was regarding the clothing and shoes, and the other report was regarding the other personal effects of the victim. There is no reason to believe that the lab report regarding the cocaine was inaccurate or that the prosecution would not have readily proved that the victim possessed cocaine, even if counsel had not stipulated to the report. The experienced defense counsel likely had no basis to cross-examine the lab technician about his report, so he elected to stipulate rather than waste the jury's time with additional testimony that, unchallenged, would make the state's case look stronger. There is no basis in the record to find that counsel's decision was unreasonable. For the same reason, the state court's rejection of this claim was not unreasonable.

**Incomplete Transcript**

Petitioner next argues that defense counsel immediately objected to the admission of an envelope that allegedly contained currency and illegal drugs. Petitioner claims that the objection was that the envelope had been tampered with, the currency had been removed, and the initials on the envelope had been scratched out. Petitioner contends that this objection and the trial judge's ruling were missing from the trial transcripts. Petitioner argues that the absence of these events prevented him from challenging on appeal the admission of the evidence.

The trial court judge, reviewing this claim when it was presented in a post-conviction application, noted the burden on Petitioner and found that Petitioner did not provide adequate

proof to support this claim. Tr. 995-96. The appellate court wrote that "the transcript was not shown to be incomplete or inaccurate so as to undermine the applicant's right to meaningful judicial review." Tr. 1101. Petitioner has not articulated any additional facts in his federal petition. There has been no showing that the state court's adjudication of this claim involved an unreasonable application of any clearly established Supreme Court precedent or was based on an unreasonable determination of the facts in light of the evidence presented in the state court. See 28 U.S.C. § 2254(d). There is, therefore, no basis for granting habeas relief with respect to this final claim. Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and that Petitioner's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of May, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE